Good morning, Your Honors. Renee Maness here on behalf of Mr. Brooks. Mr. Brooks is the defendant and appellant in this matter. What we are appealing from is the issuances of an involuntary medication order under the standards set forth in the Supreme Court's decision in cell. We have raised a couple of issues on appeal. I believe, based upon the government's brief, that there is an agreement among the parties that the district court's underlying order has a flaw and that there's a failure to include a temporal limit in terms of the length of a time period that Mr. Brooks may be subjected to involuntary medication before there's a determination of whether he could ever be restored to competency. Therefore, there is a necessity to remand at least on that limited issue so the district court may be able to clarify the temporal limitations on the district court should also be allowed to consider the question of whether or not this matter should proceed simply to the issue of the fact that Mr. Brooks is an extremely disorganized and paranoid schizophrenic. About one-tenth of your time is gone, and so can I get to my questions? Certainly. I just want to make sure you have an opportunity to address them. Nobody briefed or argued in the district court didn't talk about Harper at all. Was that by stipulation? Did you all agree there was no reason to talk about Harper? No, I don't believe we did. You don't believe we did agree? No, I don't believe that there was such a stipulation, Your Honor. Okay, so maybe opposing counsel could address that when it comes to the podium as well. My next question is that there's an indication in the record, although not in the district court's order, that I can even tell you the date. Maybe that doesn't matter. That there had been an administrative hearing while he was detained to determine whether or not Mr. Brooks needed to be involuntarily medicated, and the finding was that he was not. This is at sealed excerpt 33. Are you familiar with that? I'm fairly familiar with the multiple administrative hearings. I'm referring to the one then on March 5th, 2012, an administrative hearing that he didn't need to be involuntarily medicated. And probably the most concise way to ask my question is whether at any time, including up until now, Mr. Brooks has had to be involuntarily medicated. He was involuntarily medicated for a period of time in Washington. That's in the sealed excerpts of record, the first two reports. And those are also very interesting because they are temporal with our crimes. They date from 2004 and 2005. Oh, I'm sorry. And then pursuant to this incident. No, Your Honor. This time. He has not yet been involuntarily medicated pursuant to this incident. He did not come to the attention. Well, I'm not precisely sure when he came to the attention of the authorities, but he was not actually charged in this matter until approximately 2011, several years after the incidents in questions. Right. The incidents in questions occurred back in 2004, 2005. At that point in time, he was also arrested on an assault charge in Washington. So we're very familiar with the facts of the case, and now your time is down to six and a half minutes. My next question, if I could get to it, is whether or not this hearing that was held on March 5th pursuant to Section 549.43, was that a Harper hearing? I don't believe it was. It was certainly not a Harper hearing to the extent that he was represented by counsel and given those protections, Your Honor. I think that the issue in that hearing was their belief that so long as Mr. Brooks is in custody, he's not a danger. He is not a danger to others and by custody. He could have been medicated while he was there if he had been a danger to himself or others. I'm sure you would agree to that. And I think you've told me he wasn't or hasn't been. Is that right? He has not been because while he is within the care of a psychiatric facility, he is not deemed dangerous. His danger could be, but he wasn't. Could be, but he has not been. And I think that's been consistent. That, in fact, is why, for instance, the Minnesota Department of Corrections, who reviewed him in 2010, under their standards for involuntary medication, their state standards stated unless he is a danger within our facility, we will not involuntarily medicate him. So they never chose to involuntarily medicate him. Right. His danger within confines was not an issue. You haven't raised the Harper issue. No, he's not a danger so long as he is within the confines of a psychiatric care facility or the BOP Springfield, which is also a psychiatric care facility. All right. So on remand, because you seem to agree that the duration of any medication order would have to be addressed, I think your other argument really goes to the importance of the government's interest. Correct, Your Honor, particularly because we believe that it's going to be basically undisputable that even if Mr. Brooks is restored to competency, and there certainly is some question about the possibility. I recognize 70% of individuals can be. Mr. Brooks is a 50-year-old gentleman who has suffered from paranoid delusional schizophrenia for over 30 years. Very little time of that has been medicated. Whether medication could help now is he may well be in the 30%. But even if he is, we have in 2004 and 2005 determinations out of Washington that once he was restored to competency there, he was not guilty by reason of insanity of the crimes at issue. And that was an assault charge. And even the government has acknowledged that the crimes that he is accused of here, at the time he was suffering from obsessions and delusions regarding the Russian mafia mob, the KKK. So that goes to whether he's competent. But that also goes to whether or not there will be a defense on the merits because he was insane at the time of these crimes back in 2004 and 2005. And it's notable that Washington State, after they restored him to competency, made a determination that for their own crime, which was quite temporal to these crimes, it was an assault on a bus driver. He was, in fact, not guilty by reason of insanity under Washington law. So our question is why pursue or why go through the extra steps of resolving the criminal case when the reality is Mr. Brooks is going to be subjected to determinations for whether he will need to be subject to the court for the rest of his life for either placement in a custodial situation such as a psychiatric hospital if he will not agree to maintain his medication  So the question is whether the governmental interest necessitates using a great deal of governmental resources to reach a determination that we think is pretty inevitable, which is that Mr. Brooks was not guilty by reason of insanity at the time of these incidences. And I'll reserve the rest of my time for rebuttal. Thank you, Your Honors. Okay. Thank you. Okay. For the government, we have Mr. Pfeiffer. May it please the Court, Stephen Pfeiffer for the United States. Do you want me to just answer questions or should I? Can I just ask the question, do you agree that Harper was not at issue, wasn't raised, and nobody has argued for it? It wasn't raised because the record shows, the sealed record at page 33, as Judge Christin noted, and also page 35, there are statements that the defendant was not deemed to be a danger within the institution, which is a Harper question. This is a Sell question exclusively, and that's why we basically skipped over that part and never really raised it. Of course, the district court, we have case law saying that Harper has to be reached before Sell is reached. That's true. And so your answer to this question about this March 5th administrative procedure where he was not found to be a danger to himself or others, that's a Harper finding? That is a Harper finding. Thank you. Not a danger within the institution. As Ms. Main has said, we believe this man does pose dangerousness problems when he's out in the community, out in the public, and that's based upon his prior record as the court noted. We have a little problem with status quo and the staleness of this information. And so on remand, I think you've agreed, attention needs to be paid to a durational requirement. Right. But won't the court need to back up and get new information regarding competence? Absolutely. Okay. I've been in touch with the hospital authorities in Springfield, and I think that they want to give an update to the court regarding his continued condition. I did want to address the specific issue of the counsel raises, which wasn't raised in the district court, and that is sort of a presumption that he's going to be found not guilty except for insanity. And what happens next, that presumes a lot. It presumes that he's competent. It presumes that he wants to go to trial or plead NGI or stipulate to it. It presumes that when he's found competent, he won't be dangerous. And there are many people who are, it happens all the time, are competent. They go to trial, they're found not guilty except for insanity, and they're deemed to be dangerous even though they're competent. And if this had come up at the time and counsel had cross-examined Dr. Sarazin on that, I would assume that he would say it's speculative. We don't know what his condition would be at the time he's found competent, at the time he actually goes to trial or pleads and disposes of his case. It's a totally speculative situation. I don't think SELL in any way anticipated that the courts would get into that. And there are other alternatives. Counsel cites one statute, 4246, but there's also 4243 and 44 and 45 regarding hospitalizations and other situations, and we don't know which one of those would apply. We're assuming that he found NGI. I think that would be a good disposition here, and then we could deal with dangerousness down the line. Counsel, just to follow up on that point, whether we're talking about 4243, 4244, 4246, one would be not guilty by reason of insanity. One would be hospitalization of an imprisoned person, I believe, and one is hospitalization of a person due to release, due to be released, but suffering from mental disease or defect. So am I correct that a person falling within the scope of any of those statutes would be detained, right? If they're found to be, continue to be dangerous. Continuing danger. Right. So how does that factor into the analysis that you have, that the district court has to do under cell regarding the government's interest in proceeding with the prosecution? That's another good question because she sort of, counsel sort of bootstraps this argument onto the cell requirement of the importance of the case to the government, and the statutes speak for themselves. I mean, you can assume that if one of these applies, then you'd have to deal with the issue of dangerousness and why that's very important to the government in this case because of his prior history, but you can't assume the result, and you can't, the court, in this case, as I said, could not have Dr. Sarazin testify to what ifs because he doesn't know what Mr. Brooks' condition would be once he's restored to competency. I don't think either one of us know because we haven't seen that, and we haven't seen it in the record, the prior record, because it doesn't appear to have happened before. So in terms of the scenario, if he is medicated to the point where he's deemed competent to go to trial, he will be involuntarily medicated for that purpose. Right. Right. And so you're saying you can't be guaranteed it will be NGI, and he will be, in fact, confined. Right. If he is found guilty, then he'd be confined for violation of the law, and if he's, what would be the option other than that? Well, this carries a mandatory minimum of five years. Five years. Five-year sentence at least. Are you saying what happens if he's NGI? Well, I'm trying to figure out, you know, the issue here is he's being involuntarily medicated at this point, not for dangerousness within the institution, but to get him in front of a jury. And so what happens if he is either NGI or found guilty on the merits? He's still subject to involuntary medication. Well, you have to stay competent throughout the proceedings. I understand that. Yes. Yeah, but then he winds up NGI. He would presumably be held until he's rendered not or whatever the, you know. Not dangerous. Not dangerous. Right. And so that would not necessarily involve medication, though. Not necessarily. At that point. Then they could stop the medication, and he'd be benign in custody or in confinement. Well, based on what I know in this case, I don't think that would work. But stopping the medication would revert him to this acute form of paranoid schizophrenia, and he'd be delusional again. That's his history? Is that what you're speaking to now? Yes, right, when he's not medicated. Okay, counsel, I've got one question for you. Is there any legal authority that any of these procedures, 42, 46, or the other ones, trump the government's interest in restoring him to competence so they can bring him to trial? I don't think so. I haven't seen any cases that say that. You're looking for legal authority? I don't think there is any. CEL doesn't discuss these options, and that's the main guide here is the CEL decision. And as you say, for the first standard, the first prong here is the interest to the government, and Judge Haggerty dealt with that very effectively when he looked at the whole record and determined that this crime and this defendant's history speaks for itself in terms of the importance to the government. Thank you. Could you just update us before you leave the podium? Am I right that we certainly have the district court's order, but it's been stayed so he hasn't been medicated, is that right? He has not been medicated. Either under CELNALS or for any other reason. And I can tell you that a Harper issue hasn't arisen in Springfield in the meantime. Thank you. Thank you. Thank you. Okay, Counsel, I've got the same question for you if you could address it as part of your rebuttal. Is there any legal authority that says 4246 would trump the government's ability to use medication to restore him to competence so he's fit for trial? We did cite the one decision, I believe, of this court. Let me grab my brief very quickly. Where I acknowledge the court held to the contrary of our position, that it was not necessary for the court to consider those issues. I believe that was not Hernandez-Esquez. Just one second. Okay, well, that was just a Harper. I'm not sure that there was a case where the Ninth Circuit, I believe it was, was asked to consider whether the court, while in consideration of CELN, should consider the fact that the individual was likely to be found not guilty by reason of insanity and jump specifically to the considerations of 4243, which is the dangerousness evaluation. And this court determined that it did not have to do so, that it could simply focus on the interests of the government. And that's a Ninth Circuit authority? I believe so, Your Honor. So wouldn't that bind our panel if that's true? I believe that they said. You could raise it and bank, but we'd have to follow that. I don't believe that it was a determination that the court did not have to, but it did not say that the court could not do so. So I guess my question was beyond Ninth Circuit authority. Whether there was any authority in any circuit or any district court that you could cite that took this position. Not that I'm aware of, Your Honor. We are acknowledging that this is a unique case. But I do think that if you look at the history of Mr. Brooks, he is one of the few individuals where we do actually have a great deal of historical information about him. And, for instance, we do, in fact, know what happens after he's restored to competency. He was restored to competency very briefly in Washington back in 2004 and 2005, where he was then found not guilty by reason of insanity, the exact same temporal time we're addressing. He was released by Washington because they would not put him in custody. As soon as he was back on the streets, he refused to take his medication, because as many disorganized and delusional schizophrenics who are paranoid don't believe they're mentally ill. He then committed additional crimes in Minnesota. He was at that point in time in Minnesota considered, but was not restored to competency, and then he came here. So in these particular situations, I think that asking the court if it wanted to jump to the considerations of 4242 or 4243 or 4246 would be an appropriate remedy. Thank you. Thank you, Your Honors. Okay, we appreciate the excellent argument of both counsel for both sides.
judges: Fisher, Gould, Christen